# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

RAMONA VICTORIA MARES, EX REL.
HER DECEASED FATHER, JOHN MARES,

      Plaintiff,

      vs.                                                                                 No. 1:17-CV-00529-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that her deceased father ("Mr. Mares") was not entitled to disability benefits, prior to his death, under Title II or Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, §§ 1381-1383f. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has considered Plaintiff's Motion to Reverse and Remand for a Rehearing or for Immediate Payment of Benefits (Doc. 21), filed October 31, 2017, the Commissioner's response in opposition (Doc. 25), filed January 4, 2018, and Plaintiff's reply (Doc 26), filed February 16, 2018. Having so considered, the Court FINDS and CONCLUDES that Plaintiff's motion is not well-taken and should be denied.

## I. PROCEDURAL BACKGROUND

On October 15, 2013, Mr. Mares filed applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). (AR 220, 226). On February 21, 2014, it was determined that Mr. Mares was not disabled and his claim was denied. (AR 120, 124). This determination was affirmed on July 22, 2014 (AR 130, 133), and a

subsequent hearing before an administrative law judge ("ALJ"), held on April 2, 2015, again ended in a denial. (AR 15-26). The ALJ's decision became final when, on March 6, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-4). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5).

Unfortunately, Mr. Mares died on May 11, 2015, and thus only his claim for Title II disability insurance benefits survives the appeal at bar.[1]

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 162. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the

---

[1] *See* 42 U.S.C. § 1383(b)(1)(A)(i) (explaining that, if an individual is deceased, only a surviving spouse may recover SSI benefits). Mr. Mares was not married at the time of his death. In her Reply (Doc. 26), Plaintiff appears to concede that the SSI claim was extinguished.

Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. ANALYSIS

### A. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act further adds that for the purposes of § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

When evaluating a disability claim under this standard, the ALJ employs a five-step sequential process. 20 C.F.R. § 404.1520. In the first four steps, the claimant must prove that he or she (1) is not engaged in any substantial gainful activity; (2) has a severe physical or mental impairment, or combination of impairments, that meets the twelve month duration requirement; (3) has an impairment, or combination thereof, that meets or equals a listing in 20 C.F.R. pt. 404, subpt. P, App. 1; and (4) is unable to engage in past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). If the disability claim survives step four, the burden shifts to the ALJ to prove, at step five, that the claimant is able to adjust to other jobs presently available in

significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

Steps four and five are based on an assessment of the claimant's residual functional capacity ("RFC") which gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).

### B. The ALJ's Determination

As detailed in the unfavorable decision underlying the case at bar, ALJ Frederick Upshall Jr. engaged in the sequential analysis set forth above, first finding that Mr. Mares had not engaged in substantial gainful activity since his alleged onset date of January 5, 2011. (AR 18). ALJ Upshall also determined that Mr. Mares met the insured status requirements of the Social Security Act through December 31, 2012. (AR 17). At step two, ALJ Upshall found that Mr. Mares had the severe impairments of osteoarthritis in the left knee and right ankle, reactive airway disease, cirrhosis of the liver, migraine headaches, alcohol use disorder, and obesity. (AR 18). At step three, the ALJ determined that none of Mr. Mares' impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (*Id.*).

ALJ Upshall next assessed Mr. Mares' RFC, finding that Mr. Mares had the residual functional capacity to:

> lift up to 10 pounds occasionally and lift or carry 5 pounds frequently. The claimant could stand or walk for approximately two hours in an eight-hour workday with normal breaks, and sit for approximately six hours in an eight-hour workday with normal breaks. He could never climb ladders, ropes, or scaffolds, and could not crouch, kneel, or crawl. He could occasionally climb ramps or stairs limited to one flight, and could occasionally stoop. He could frequently but not constantly handle and finger bilaterally. He had to avoid concentrated exposure to environmental irritants such as fumes, odors, dust, and gases, and he had to avoid poorly ventilated areas. The claimant had to avoid all exposure to unprotected heights. He was limited to unskilled work.

(AR 19-20). With this assessment at hand, ALJ Upshall determined, at step four, that Mr. Mares was unable to perform any of his past relevant work. (AR 24).

Proceeding to step five, the ALJ found that Mr. Mares could have performed other jobs that exist in significant numbers in the national economy. (AR 25). Specifically, he determined that Mr. Mares retained the residual functional capacity to perform the requirements of an addresser (DOT 209.587-010); an escort vehicle driver (DOT 919.663-022); and a telephone quotation clerk (DOT 237.367-046). (AR 25). Accordingly, ALJ Upshall determined that Mr. Mares was not disabled. (AR 26).

In her motion, Plaintiff argues that the above determination was flawed because ALJ Upshall improperly rejected the opinion evidence of Mr. Mares' treating physician, Dr. Greenwald; failed to include a function-by-function physical assessment in his decision; failed to properly evaluate Mr. Mares' description of his symptoms; and failed to conduct the required analysis in determining whether the available jobs he identified in step five of his analysis actually exist in "significant numbers."

This case presents a unique challenge as the bulk of the ALJ's decision and Plaintiff's arguments are based on evidence which applies to Mr. Mares' claim for supplemental security insurance benefits under Title XVI, yet the SSI claim was extinguished upon Mr. Mares' death. The Court, then, is left to review the ALJ's determination as it pertains to Mr. Mares' DIB claim and it will not reach the arguments set forth in Plaintiff's motion.

To further complicate the matter, ALJ Upshall did not provide separate analyses for each of Plaintiff's claims. While the Court could remand to the Commissioner for a decision which explicitly addresses Mr. Mares' DIB claim, for the reasons set forth below, the Court finds that Plaintiff has not established that Mr. Mares was under a disability prior to his last insured date of

December 31, 2012. Consequently, a remand on this issue "would serve no other purpose than to needlessly prolong a protracted course of proceedings." *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009).

### C. Plaintiff's Claim for DIB Benefits

For the purposes of a DIB claim, the claimant must establish that he was disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A), (E) (explaining, inter alia, that to receive disability insurance benefits, one must be both disabled and insured for the benefits). In this case, Mr. Mares alleged a disability onset date of January 5, 2011, and his insured status expired on December 31, 2012. ALJ Upshall, then, was required to consider any evidence that was relevant to this nearly two year timeframe. However, prior to 2013, the record only contains the scant medical evidence summarized as follows.

Christus St. Vincent, August 2010-September 2010

Mr. Mares was noted to have morbid obesity, leg pain, a medial thigh ulceration, aggravated by a "significant venous disease," and hypertension (AR 392, 419, 428-29). He was also noted to be ambulatory with no history of falling, (AR 464), and a screening showed that he was able to leave the house, live independently, and that he considered himself to have a "better" health status than other people of the same age. (AR 468-69). Although it appears that Mr. Mares was also recovering from a leg injury during this timeframe, he was cleared to return to "light duty" on September 16, 2010. (AR 403).

San Juan Regional Medical Center, March 30, 2011-April 1, 2011

Mr. Mares was admitted into the hospital on March 30, 2011, with acute respiratory failure with hypoxia due to extensive right lung pneumonia; morbid obesity; and hypertension. While in the hospital, he was also determined to have acute liver injury secondary to alcohol use (which

improved during the admission); alcohol withdrawal; hypertensive urgency (partly due to his alcohol withdrawal); and anemia. (AR 519, 521). Mr. Mares was discharged on April 1, 2011, with instructions to visit his primary physician within one to two weeks and a strong "caution" to stop drinking alcohol. (AR 520).

Following Mr. Mares' discharge from the hospital on April 1, 2011, there is a lapse in medical evidence until September 29, 2013. On that date, Mr. Mares presented to the hospital with acute alcoholic hepatitis and cirrhosis. (AR 513). He was admitted and treated for several additional issues including hepatic encephalopathy; thrombocytopenia, enterococcus faecalis UTI; acute kidney injury; hypokalemia; ascites with peripheral edema; and macrocytosis. (AR 513-14). At the time, Mr. Mares had a Model for End-Stage Liver Disease score of 29 which corresponded to a fifty-eight percent (58%) mortality rate in the next ninety-eight (98) days. (AR 514). Mr. Mares was discharged on October 4, 2013.

The remainder of Mr. Mares' medical evidence is detailed in the ALJ's Decision. This evidence reflects that Mr. Mares' energy and activity levels increased in 2013, and that he had improvements in his liver functioning in 2014. *See* AR 560, 562, 566-67, 639. The record also shows that Mr. Mares received several diagnoses in 2013 such as Hepatitis C (AR 480), cirrhosis (AR 513, 715), tremors (AR 563) and reactive airway disease (AR 573). In 2014, Mr. Mares was diagnosed with degenerative joint disease in his right ankle and foot and his left knee; chronic pain in his right hip, and muscle weakness of his lower extremities. (AR 698). He was referred to physical therapy to work on strengthening his lower extremities, quadriceps, and hamstrings. (AR 697). By 2015, Mr. Mares was experiencing increased pain in his lower extremities and he was receiving treatment for cellulitis in his left leg. (AR 754). Ryan W. Tingle, DPM recommended that Mr. Mares wear a fracture walker boot and see an orthopedist

"for his hands" but Mr. Mares declined both recommendations. (AR 751). Evidence suggests that Mr. Mares' pain and physical limitations continued to increase throughout 2015. *See, e.g.*, AR 792.

The Commissioner argues that the only evidence relevant to Mr. Mares' DIB claim are the records from Mr. Mares' March 30, 2011 to April 1, 2011 hospitalization. This, asserts the Commissioner, is not sufficient to establish that Mr. Mares was disabled prior to his date of last insured. (Doc. 25, pp. 5-6). In her reply, Plaintiff counters (1) that records dated after a claimant's DLI may not be rejected solely based on their date; (2) that a medical assessment provided by Rose Greenwald, M.D. was completed with a "retrospective view of Mr. Mares' medical history and the chronicity of findings as from 2011 to current examination"; and (3) that a lack of treatment does not mean that an impairment does not exist. (Doc. 26, pp. 3-4).

While the ALJ's determination that Mr. Mares was not disabled for the purposes of SSI benefits is questionable, at least as of 2015, the record does not establish that Mr. Mares was disabled prior to December 31, 2012.

### 1. Timing of Records

Plaintiff correctly asserts that records outside of a claimant's onset date and his date of last insured may not be rejected due to their timing alone. In *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (unpublished), for example, the Court stated that an ALJ can make inferences about the progression of an impairment by relying on earlier evidence. Additionally, some jurisdictions, such as the Eighth Circuit, have also held that evidence which postdates a claimant's date of last insured "is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).

In the case at bar, however, the only records that predate Mr. Mares' onset date are those from Christus St. Vincent which show that Mr. Mares was active and able to work. And, the evidence that falls within the relevant timeframe simply shows one brief hospitalization with discharge instructions to cease drinking alcohol and to follow up with a physician in one or two weeks. Turning to the evidence that postdates Mr. Mares' date of last insured, the records do show a progression of alcohol related illnesses and the development of musculoskeletal and respiratory impairments, but the evidence does not offer any insights to Mr. Mares' condition prior to his date of last insured. *Cf. Basinger*, 725 F.2d 1166, 1169 (8th Cir. 1984) (discussing the importance of testimony and medical records which place the claimant's disabling conditions within the insured period). Although Plaintiff cites to many medical records from 2013 to 2015 to support her contention that Mr. Mares was disabled prior to his date of last insured, *see* Doc. 26, p. 4, the evidence cited, at most, shows the aforementioned progression in the severity of Mr. Mares' impairments. The evidence does not indicate that Mr. Mares was under a disability prior to the expiration of his insured status.

### 2. Evidence Submitted by Dr. Greenwald

On April 22, 2015, Mr. Mares' treating physician, Rose Greenwald, M.D., completed a Medical Assessment of Ability to Do Work-Related Activities. Included in the instructions of the form was a direction to provide "an assessment of [the] patient's impairment-related physical limitations" and a request that the doctor "consider [the] patient's medical history and the chronicity of findings as from 2011 to current examination." (AR 792). Dr. Greenwald completed this form and noted several limitations. Plaintiff contends that this should be deemed a "retrospective" opinion; yet, the assessment expresses Dr. Greenwald's opinion as to Mr. Mares' limitations on April 22, 2015. A request that the doctor consider findings from 2011 to

the present examination does not turn the assessment into a retrospective opinion. And, Dr. Greenwald did not begin treating Mr. Mares until October 2013. (AR 632). Further, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of [his] insured status….A retrospective diagnosis without evidence of actual disability is insufficient. This is especially true where the disease is progressive." *Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348–49 (10th Cir. 1990). Here, there is no evidence that Mr. Mares was under an actual disability prior to his date of last insured.

### 3. Absence of Evidence

Finally, plaintiff cites to *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) for the proposition that the absence of treatment does not equate to the absence of an impairment. The Court agrees with this contention; however, it is inapplicable to the instant matter. *Grotendorst* discusses severity determinations at step two of the sequential evaluation. *Id.* ALJ Upshall did find, at step two of his evaluation, that Mr. Mares had several severe impairments and Plaintiff has not challenged this determination.

It is worth mention that of the impairments ALJ Upshall identified at step two, and then incorporated into his RFC finding—osteoarthritis, reactive airway disease, cirrhosis of the liver, migraine headaches, alcohol use disorder, and obesity—all but the last two were diagnosed after 2012. While this is not dispositive for a finding that Mr. Mares did not have all six of the identified impairments prior to 2013, there is nothing in the record which suggests that Mr. Mares' latter diagnoses had onset dates which predate 2013. Regardless, "the issue is the existence of a disability at a particular time and not the identification of a cause." *Flint v. Sullivan*, 951 F.2d 264, 268 (10th Cir. 1991).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision to deny Mr. Mares' DIB claim is based on substantial evidence.  Plaintiff has not met her burden of establishing that Mr. Mares was under a disability prior to his last insured date of December 31, 2012.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Remand to Agency for a Rehearing or for Immediate payment of Benefits (Doc. 21) is hereby **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**